```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
UNITED STATES OF AMERICA,                       :
                                                :
                    Plaintiff,                  :
                                                :   MEMORANDUM
         -against-                              :   DECISION & ORDER
                                                :
KIMBERLY ANNE STAMPS, YURIKO                    :   18-cv-1106 (BMC)
ESPINO RAMOS, KPS PRODUCTIONS,                  :
LLC, KPS PROMOTIONS, LLC, JJMK                  :
ENTERPRISES, LLC, JKS VENTURES, LLC,            :
and YR MAIL SERVICES, LLC,                      :
                                                :
                    Defendants.                 :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Defendants have moved under 28 U.S.C. § 1404(a) to transfer venue to the U.S. District Court for the District of Arizona. Defendants have not made a sufficient showing to warrant transfer, and their motion is therefore denied.

## BACKGROUND

The United States filed this action on February 21, 2018.[1] The Court granted a Temporary Restraining Order the same day. Defendants eventually filed a consent motion for entry of a preliminary injunction.

The same day that this action was filed, the United States Postal Inspection Service executed search and seizure warrants against defendants, including at defendant Stamps's home in Arizona. The Postal Inspection Service seized $700,000 of currency. A few months later, the Postal Inspection Service notified defendant Stamps of its seizure of her property and initiation

---

[1] In addition to defendants named here, the United States originally sued Barbara Trickle, Western Mailing Services, and Syber Solutions, Inc. as well. These other defendants agreed to a consent decree and final judgment with the Government on September 5, 2018. In this opinion, "defendants" refers to the defendants that are still in the case.

of administrative forfeiture proceedings and informed her of her right to file a claim for the return of the funds. Defendants Stamps and JJMK Enterprises LLC submitted a claim for return of the funds.

In May 2018, defendants moved for a premotion conference on a motion to stay the case based on parallel criminal proceedings, specifically that the Postal Inspection Service was conducting a "criminal investigation" and that "[m]ultiple search warrants were obtained and executed in Arizona, resulting in a seizure of [their] computers, books and records and more." Before the briefing on that motion was complete, the United States Attorney's Office for the District of Arizona wrote defendants' counsel about the currency that was seized the same day the case was opened, stating that there were "two parallel matters," including "a decision on [administrative] forfeiture . . . and an ongoing criminal investigation."

The Court denied defendants' motion to stay, in large part because defendants had not yet been indicted and did not produce any evidence that their indictment was imminent. The Court concluded that what was still only a potential Fifth Amendment privilege issue based on the mere possibility that the U.S. Attorney's Office might bring a criminal action did not "outweigh the potential prejudice to the Government in the form of stale evidence, the interests of the courts in an expeditious proceeding, and the public interest, particularly the interest of the alleged victims in compensation before any assets are dissipated."

After denying the motion, the Court entered a discovery schedule based on the parties' proposed timeline. That schedule called for the parties to produce documents by October 14, 2018 and for all fact discovery to be complete by December 6, 2018. (The Court later extended fact discovery until December 21, 2018 at defense counsel's request). Defendants then filed the transfer motion denied by this order.

## DISCUSSION

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." To prevail on a motion under § 1404(a), the moving party "carries the burden of making out a strong case for transfer" by "clear and convincing evidence." N.Y. Marine & Gen. Ins. Co. v. Lafarge North Am., Inc., 599 F.3d 102, 113-114 (2d Cir. 2010) (internal quotation marks and citations omitted).

"Among the factors to be considered in determining whether to grant a motion to transfer venue are, *inter alia*: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." Id. at 112.

Generally, "a plaintiff's choice of forum is presumptively entitled to substantial deference . . . . However, the degree of deference to the plaintiff's forum depends in part on a number of considerations, such as the plaintiff's own connection to that forum." Gross v. British Broad. Corp., 386 F.3d 224, 230 (2d Cir. 2004). A plaintiff's choice of its home forum, for example, is usually entitled to great deference because the court may presume that it is convenient. See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 256 (1981). Ultimately district courts weighing these factors "have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 106 (2d Cir. 2006).

Defendants argue that the Government's choice of forum should receive less deference than another plaintiff's because the Government has litigation resources available to it across the country in a way that a private litigant may not. For the same reason, defendant argues that the Government is not a "resident" of any particular jurisdiction and therefore should not benefit from the additional weight of a home forum presumption.

The Court agrees that the Government is no more a resident of New York than it is of Arizona, and so its choice of forum is not entitled to the additional deference that a resident plaintiff's choice of forum would receive under Second Circuit precedent. See TouchTunes Music Corp. v. Rowe Int'l Corp., 676 F. Supp. 2d 169, 173 (S.D.N.Y. 2009). The Court notes, however, that even the out-of-circuit cases defendants cite still accord some deference to the Government's choice of forum, albeit less than a non-Government plaintiff would receive. See F.T.C. v. Wyndham Worldwide Corp., No. CV 12-1365, 2013 WL 1222491, at *2 (D. Ariz. Mar. 25, 2013) (according "limited deference" to the FTC's choice of venue); United States v. Klearman, 82 F. Supp. 2d 372, 375 (E.D. Pa. 1999) (granting the Government's venue choice "significant weight," but less than that afforded a home-district plaintiff). The Court agrees that the Government's choice of forum should receive less deference than a non-resident plaintiff's choice, but still some deference.

Nor is this venue's connection to the events as tenuous as defendants claim. Unlike the cases defendants cite, where the "operative facts ha[d] no relationship to the Eastern District," Buckingham Properties, LLC v. Atlantic Casualty Ins. Co., 16-cv-3428, 2017 WL 3912996, at *3 (E.D.N.Y. Sept. 6, 2017), here, the allegedly fraudulent mail solicitations not only traveled out of and into the United States through the United States Postal Service International Service Center at JFK airport, but were delivered to thousands of alleged victims in the Eastern District

of New York. More importantly, the Government alleges that defendants received responses and payments from hundreds of victims in this district and cashed checks processed against bank accounts in this district. The Eastern District certainly has a "material relation" to the case, see Hernandez v. Graebel Van Lines, 761 F. Supp. 983, 990 (E.D.N.Y. 1991), and defendants do not allege that they sent a comparably number of solicitations to Arizona or any other jurisdiction.

Furthermore, although defendants argue that their sales and advertising decisions were made in Arizona, the only facts they point to as creating a situs of events in Arizona are the location of the post office boxes where they received the consumer payments, the work of a confidential informant, and the surveillance and inspection of trash. The location of defendants' post office boxes is surely no more probative of the situs of the action than the location of the mailing recipients' mail boxes. That the single confidential informant worked in Arizona does not limit where that informant could be deposed. Here, because the factual connection between defendants' scheme and Arizona in terms of documents and the physical investigation appears to be only marginally greater than the connection to New York, the "situs of the events" factor does not outweigh the reduced presumption in favor of the Government's chosen forum.

With that presumption in mind, the Court assesses defendants' other arguments for change of venue, which are based on efficiency and convenience. Neither set of arguments tips the scales in favor of transfer.

Beginning in the first paragraph of their motion and repeated throughout it and their reply, defendants argue that it would be more efficient to try the case in Arizona because there are already parallel proceedings in that jurisdiction (indeed, the motion refers to "parallel proceedings" or "multiple actions" or proceedings seven times). But, as defendants concede in their reply, there are no civil or criminal proceedings pending against them in Arizona. No

federal district court in Arizona has seen this fraud case. The only other proceedings either party has identified are: (1) administrative forfeiture proceedings that began when the Postal Inspection Service seized defendants' currency in February 2018; and (2) a criminal investigation by the U.S. Attorney's Office. Those same proceedings were happening when this Court considered and rejected defendants' motion to stay the case.

Defendants' now-debunked argument about "parallel" or "cross-country" federal proceedings informs defendants' arguments about several other factors as well, including the relative means of the parties and (to an extent) the convenience of the parties. Because there is no parallel action pending, those factors do not weigh in favor of transfer.[2]

Defendants also overlook another key efficiency point in favor of denying the motion: the parties have completed the lion's share of discovery, including document production (this was true by the time their motion to transfer was fully briefed). Although the Court agrees that the motion to transfer is not untimely, see Federal Trade Commission v. American Tax Relief LLC, No. 10 C 6123, 2011 WL 2893059, *3 (N.D. Ill. 2011), the progress made in this case counsels against transfer to another jurisdiction, where the transferee court would invariably have to familiarize itself with the allegations, procedural history, and the status of discovery. See Oral-B Labs., Inc. v. Mi-Lor Corp., 611 F. Supp. 460, 463 (S.D.N.Y. 1985). For the same reason, the location of relevant documents does not favor transfer either. The parties had already exchanged documents before this motion was fully briefed. (Given that almost all discovery

---

[2] In their motion, defendants argued that an Arizona district court's familiarity with Arizona contract law favors transfer because whether the individual defendants can be held personally liable for the acts of the defendant corporations under Arizona law will be a significant legal issue. The Government alleges that the individual defendants acted through the defendant corporations and that defendant Stamps is liable based on the consent order she signed in her individual capacity. The Court agrees that Arizona contract law is unlikely be a major part of the case, at least not in any way defendants have shown so far.

6

today is sent and received electronically, this factor probably would not have played a significant role anyway.)

Furthermore, although defendants have declared that they each have Arizona counsel, they do not claim that their Arizona counsel is familiar with these federal proceedings, including the substantial discovery the parties have already undergone. This Court denied defendants' motion to stay in part out of concern that delaying the case could allow defendants' assets to be dissipated before any of the alleged victims are compensated; those same concerns about delay are relevant here too.

The lack of parallel proceedings also undermines defendants' convenience arguments. As the parties agree, convenience of the parties and non-party witnesses is a significant factor. However, the "convenience of non-party witnesses is accorded more weight than that of party witnesses." Mazuma Holding Corp. v. Bethke, 1 F.Supp.3d 6, 30 (E.D.N.Y. 2014). Transfer to the district of Arizona might be more convenient for the parties, but not necessarily for the non-party witnesses. The only non-party Arizona witnesses that defendants have identified are one employee of defendants, one former employee, and a U.S. Postal Inspector. On the other hand, the Government has stated that it intends to call multiple victim witnesses from this district at trial. Those witnesses could not be compelled to testify in Arizona. (The Government has identified as witnesses two victims, one in Virginia and one in Washington state; New York and Arizona would be equally inconvenient for that pair). The Government has also identified at least one other individual and corporate witness that reside in New Jersey across the river from New York City, for whom New York would be the more convenient forum.

Although the Government had not identified the New York resident witnesses as of the filing of its opposition, its counsel has repeatedly represented to this Court that it will, and the

7

Court expects that it will. However, even if the Government did not, the Court is doubtful that the convenience of three non-party witnesses outweighs the efficiency costs that would be imposed should a District of Arizona court and plaintiffs' Arizona counsel have to restart with the case now that it is thins far along.

Defendants, who all reside in Arizona, argue that the District of Arizona would be more convenient for them. That is certainly true for trial, but it is not entirely clear for the pre-trial proceedings. Defendants have been ably represented by New York counsel so far and although they each have Arizona counsel, they have not represented to the Court that their counsel is familiar with the case. Although defendants will have to travel to New York for trial, there is no reason they will have to do so before then. The Court recognizes that cross-country travel is expensive, but defendants may well expend an equal or greater amount in attorneys' fees for their Arizona counsel to get caught up on this case, including with the discovery that has already been produced.[3]

Having considered all seven factors in light of the facts and procedural posture of this case, the Court concludes that defendants have not made out the requisite strong case for transfer. Although the convenience of the parties and witnesses does weigh slightly in favor of an Arizona venue, those factors do not outweigh the Government's (somewhat reduced) presumptive choice of forum, particularly considering the progress already made in this case and this Court's familiarity with it.

---

[3] Defendants also cite the Justice Department's newly enacted "Anti-Piling On" policy as another reason to transfer this case. That policy urges Government attorneys to, among other things, "coordinate with one another to avoid the unnecessary imposition of duplicative fines, penalties, and/or forfeiture against the company." It does not appear to apply here. The administrative forfeiture in Arizona is not duplicative of the statutory penalties sought here and defendants have not suggested that the administrative forfeiture would be terminated if this proceeding were transferred. Furthermore, even if there were a pending criminal matter (which there is not), a discretionary DOJ policy would be unlikely to affect the Court's weighing of the factors absent some representation from the Government that it would be applied in a way that would promote the goals of transfer.

## CONCLUSION

Defendants' motion to transfer venue [53] is denied.

**SO ORDERED.**

_____
U.S.D.J.

Dated:  Brooklyn, New York
        November 16, 2018